**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**GREGORY CULBREATH,**
     **Plaintiff,**

**v.**                                       **No: 1:05CV14/MP/MD**

**JO ANNE B. BARNHART,
Commissioner of Social Security,**
     **Defendant.**

_____

**REPORT AND RECOMMENDATION**

     This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Culbreath's applications for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

     Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence and that plaintiff has not been denied due process; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff's applications for benefits were denied initially and on reconsideration, and he requested and received a hearing before an Administrative Law Judge (ALJ). The ALJ rendered an unfavorable decision (Tr. 15-25) and the Appeals Council declined review (Tr. 4-6), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## STANDARD OF REVIEW

The issues raised here are twofold. First, plaintiff argues that he was denied due process when a biased judge prevented him from cross-examining a witness. Violations of constitutional rights are reviewed *de novo*. *United States v. Paz*, 405 F.3d 946 (11th Cir. 2005). Second, plaintiff argues that the ALJ posed an incomplete hypothetical to the vocational expert. The standard of review for this second claim is the familiar one. The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted).

Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

## PLAINTIFF'S MEDICAL HISTORY

The issues raised in this appeal are narrow ones, dealing with plaintiff's right to cross-examine a vocational expert at the hearing before the ALJ, with whether the ALJ showed bias, and with whether the ALJ posed a proper hypothetical to the vocational expert. The court will therefore not discuss the medical record in detail. Generally, plaintiff suffers from complications of hypertension, including headaches, visual disturbances, fainting, and at least one episode of acute renal failure. He also had a tumor surgically removed from his pituitary gland. His neurosurgeon, Dr. Stevenson, filled out various forms, and in them opined essentially that plaintiff's pain was so great as to preclude work, and that he could sit for one to two hours per day, could stand for one to two hours per day, and in combination, he could work for only one to two hours per day (Tr. 276-282). Other opinions of other physicians were less restrictive. Dr. Stevenson's opinions are indirectly relevant to the constitutional claims made here.

## DISCUSSION

The plaintiff argues that the ALJ erred in refusing to allow counsel to make a complete cross-examination of the vocational expert at the hearing, that the ALJ was biased, and that the ALJ failed to pose a complete hypothetical that described all of plaintiff's impairments, and that plaintiff was disabled from his onset date as a matter of law. The Commissioner argues that the limitation on cross-examination was proper, that there has been no showing of bias, and that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether plaintiff's due process rights were violated, and whether

**the ALJ's decision that the plaintiff was not disabled, in light of his physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.**

    1.    <u>**Cross-examination.**</u>

At the hearing plaintiff's counsel cross-examined the vocational expert, and asked whether certain medical limitations, when added to the hypotheticals posed by the ALJ, would preclude work. The vocational expert responded that they would (Tr. 379-380). Then the following transpired:

> Q: Now forget that one. Let's go back to the first hypothetical, and this time add to the ALJ's hypothetical that two to three days a week, the person's going to be significantly late for work, so that they're at least 15 to 30 minutes late for work.
>
> ALJ: I'm not going to allow that question. There's no basis for that question.
>
> ATTY: The question is based on the doctor's form from Dr. Stevenson [phonetic] at page 5, where it says –
>
> ALJ: I'm not giving any credence into those reports, and those words that were complained by the doctor, they are contradictory, they are not supported by medical evidence. This doctor has not seen this claimant, so I'm not going to –
>
> ATTY: The testimony is the doctor saw the claimant within the last month. The doctor – that he brought all his medical records to the doctor, said the doctor is Dr. Stevenson –
>
> ALJ: I'm not allowing that question.
>
> ATTY: Hey, Your Honor, I mean –
>
> ALJ: I'm not allowing the question, period. Ask other questions.
>
> ATTY: So no questions based on – from the treating physician's opinions? No questions, I mean you're –
>
> ALJ: Do you have any other questions, Counsel?

ATTY:  Yeah, sure.

ALJ:  All right.

ATTY:  Based on, but it's also based on the treating physician's opinions, Your Honor.  So if your banning his opinions.

ALJ:   What's the question?

ATTY:  The question would be that –

ALJ:  I didn't allow the previous question, because there's nothing to support that either.

ATTY:  That's the claimant's testimony, Your Honor.

ALJ:  But, whatever.

ATTY:  Well –

ALJ:  Any other questions?

ATTY:  Sure.

ALJ:  Go ahead.

ATTY:  Based again, on the treating physician's opinion at page 5, here.

ALJ:  He's not a doctor, the vocational expert is not a doctor.

ATTY:  I'm just giving you the basis of the hypothetical, Your Honor, because you said there was no basis in the record. But I wanted it very clear on appeal, that there's a basis in the record for every word that I'm uttering.

ALJ:  Question?

ATTY:  Okay. The question is, starting with the first hypothetical. If the person could be reasonably punctual in arriving at work, but on an hourly basis was dealing with their own concerns, for a period of five to fifteen minutes per hour over the course of the entire workday. Would a person be able to –

ALJ:  I'm not going to allow that question either.

ATTY:  Okay. Just for the record, Your Honor, that's question C on page 5, where the doctor says that this claimant would have a marked inability –

ALJ:  That's okay.

ATTY:  – to work at a consistent pace without an unreasonable number and length of rest periods. Then they –

ALJ:  I'm taking administrative notice that a person has to work at least eight hours a day, with a break period for lunch, and a 15 minute break period in the morning, and one in the afternoon. Is that correct, Mr. Goman, they're expected to work at least eight hours a day, if they cannot work eight hours a day for 40 days a week, well they're not engaging in substantial gainful activity on a regular and sustained basis.

ATTY:  Okay. So you're taking administrative notice that –

ALJ:  I'm not allowing the question.

ATTY:  I understand, Your Honor. But you're taking administrative notice that and assuming that the doctor's correct –

ALJ:  Any other question, Counselor?

ATTY:  – that he has a marked inability to either be punctual –

ALJ:  Any other question?

ATTY:  Your Honor.

ALJ:  I'm not here to argue with you.

ATTY:  I'm not arguing, I just want to be clear on the record that –

ALJ:  You can put that on an appeal if you want to, but –

ATTY:  Well, it's obviously –

ALJ:  Any other questions?

ATTY:  – being set up an appeal, Your Honor. Sure. The same doctor filled out a physical capacity assessment. So just for the record, you're not –

ALJ:  Question, what's the question?

ATTY:  I'm asking whether you're taking any –

ALJ:  I'm asking you what's your hypothetical, Counsel?

ATTY:  Hypothetical, well let's see. I don't know if there'd be any hypothetical at this point, Your Honor, since there's nothing else in the record to

ask questions about.

ALJ:  Okay, anything else? Ten days to get the reports.

ATTY:  Certainly, Your Honor. Just for the record, so that I'm not accused of blindsiding you. It's a violation of Federal Law to prevent hypothetical questions based on the record. You're pre-judging the evidence by saying that Dr. Stevenson has no basis for his opinions. Yet, you're going to base an opinion on what, a nonexamining doctor in Exhibit 6F? That's better, that's somehow better than an examining doctor?

ALJ:  I'm basing my record on the whole record as a whole, and the claimant's testimony, which is completely contradictory to the testimony that you have submitted, and which is completely inconsistent. These opinions are not sustained or supported by any medical evidence, they're contrary to the rest of the medical evidence and that's it. Anything else?

ATTY:  No, I'll see you next time with this one.

**(Tr. 380-384).**

**Plaintiff contends that his right of cross-examination, and specifically his right to cross-examine the vocational expert, is based on procedural due process.  This is correct, but as will be shown below, the right of cross-examination in an administrative proceeding is not unlimited.  The issue first arose in *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  There, an ALJ ordered a post-hearing medical examination and, even though it disfavored the claimant and contradicted all the other, favorable, medical evidence, relied on it extensively in denying disability benefits.  The claimant challenged the use of such hearsay evidence as not having been subjected to cross-examination, as unreliable, and as insufficient to serve as the substantial record evidence necessary to support an ALJ's decision, particularly in light of the fact that it was contrary to virtually all the other evidence in the record.  The Court disagreed.  It noted that the Social Security Act granted the Commissioner the power to establish hearing procedures, made the**

formal rules of evidence inapplicable, and made the conduct of the hearing a matter subject to the ALJ's discretion. 402 U.S. at 400, 91 S.Ct. at 1427. The Court further noted that the Administrative Procedures Act, 2 U.S.C. § 556(d) (APA) restricts a party "to such cross-examination as may be required for a full and true disclosure of the facts." 402 U.S. at 409, 91 S.Ct. at 1431 (also noting that the APA and the Social Security Act are in conformity on this issue even though the latter does not contain the quoted language). Because "the agency operates essentially, and is intended so to do, as an adjudicator, not as an advocate or adversary," 402 U.S. at 402, 91 S.Ct. at 1428, the ALJ is permitted to rely on what would otherwise be inadmissible hearsay . Finally, the Court emphasized that when dealing with medical reports, "the specter of questionable credibility and veracity is not present . . .," only "professional disagreement." 402 U.S. at 407, 91 S.Ct. at 1430.

    Addressing the fact that the medical report had not been subjected to cross-examination, the Court held that cross-examination was available under section 205(d) of the Act, 42 U.S.C. § 405(d). That section authorizes the Commissioner to issue subpoenas, which could have been used by the claimant's attorney to require the witness' attendance for cross-examination.[1] Since the claimant's attorney had not requested a subpoena, the right of cross-examination had been waived. Thus, "[t]he matter comes down to the question of the procedure's integrity and fundamental fairness[,]" and there is nothing inherently unfair about the use of written medical reports where the opportunity of cross-examination was present.

---

[1] **The regulations at 20 C.F.R. § 416.1450(d)(2) provide:**

**Parties to a hearing who wish to subpoena documents or witnesses must file a written request for the issuance of a subpoena with the administrative law judge or at one of our offices at least 5 days before the hearing date. The written request must give the names of the witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena.**

402 U.S. at 410, 91 S.Ct. at 1431.

The law on this issue was further developed in *Solis v. Schreiker*, 719 F.2d 301 (9th Cir. 1983). There, the court held that the ALJ had abused his discretion in denying a claimant's request for the issuance of a subpoena, where the party that counsel wanted to cross-examine was "a crucial witness whose findings substantially contradict[ed] the other medical testimony." 719 F.2d at 301. The court cautioned, however, that the discretion to determine what cross-examination is warranted is vested in the ALJ, and that a claimant "is not entitled to unlimited cross-examination, but rather 'such cross-examination as may be required for a full and true disclosure of the facts.'" 719 F.2d at 302, citing 5 U.S.C. § 556(d). The Eleventh Circuit reached the same conclusion in *Demenech v. Secretary*, 913 F.2d 882 (11th Cir. 1990), holding that a claimant had been denied due process when his request for a subpoena was denied, and where the subject medical report was the crucial piece of evidence relied on by the ALJ in reaching his decision. It noted that cross-examination of a physician would allow the claimant to test the reliability and credibility of any tests administered, expose the evidence the physician considered or failed to consider, and establish the certainty with which he held that opinion.

The precise issue raised here - the extent to which a claimant's attorney can be prevented from cross examining a vocational expert based on what is contained in medical reports - has not yet been addressed by a federal appellate court. Even so, the foregoing cases establish some basic guidelines: (1) the right to cross-examine is founded on due process; (2) that right is not unlimited, but is subject to considerations of materiality and relevance; (3) the right is particularly important where the party sought to be examined is a crucial witness, upon whose opinion the ALJ strongly relies; and (4) the overriding purpose of cross-examination is to address "questionable credibility and veracity."

Those guidelines do not support the plaintiff's position here. Without doubt

counsel had the right to cross-examine the vocational expert, and he was allowed to do so. The ALJ disallowed any further questioning only as it related to Dr. Stephenson's opinions. The ALJ did not abuse his discretion in restricting the inquiry. First and foremost, the vocational expert was not the type of crucial witness upon whose opinion the ALJ would make a decision concerning the *extent* of plaintiff's limitations, but only their *effect*. Second, the questions being asked were not a test of the vocational expert's credibility or methods, but were simply designed to show that if Dr. Stephenson's opinion as to a particular limitation were accepted, plaintiff would not be able to work.

For the sake of this discussion the court will assume that all answers by the vocational expert would have been favorable to the plaintiff. Still, that does not afford plaintiff relief. If Dr. Stephenson's opinion that plaintiff could work only one to two hours per day had been accepted by the ALJ, the regulations would have directed a finding of disabled with or without the vocational expert's testimony. The ALJ acknowledged this by "taking administrative notice that a person has to work at least eight hours a day . . . ." (Tr. 382). But the ALJ had already determined that Dr. Stephenson's opinions were unsupported by the record. Having made that finding after a review of the record in advance of the hearing and after having heard the plaintiff's testimony, the ALJ determined that any further inquiry into Dr. Stephenson's opinions was irrelevant.

Contrary to what the plaintiff seems to imply, there is no support for the idea that the ALJ cannot make a decision on a particular issue during the hearing after hearing the plaintiff's testimony. At the point at which the vocational expert was testifying, all the medical records had been admitted and reviewed by the ALJ, and the plaintiff had testified. The record was therefore ripe for decision as to the nature and extent of plaintiff's limitations, leaving only the question of their effect, which was the purpose of vocational expert testimony. The ALJ having determined that Dr.

Stephenson's opinions were unsupported, questioning the vocational expert on the effect that opinion would have on employability would shed no light on any remaining issue.

    2.    <u>Bias.</u>

Plaintiff also contends that his counsel's exchange with the ALJ, quoted above, shows bias on the part of the ALJ.  A suggestion of judicial bias is a strong accusation, not to be taken lightly.  *Beard v. TMG Life Ins. Co.*, 966 F.2d 1441 (4th Cir. 1992)(unpublished opinion).  "The ALJ plays a crucial role in the disability review process . . . [and the] impartiality of the ALJ is thus integral to the integrity of the system."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (holding that bias was shown where ALJ, without evidentiary support, noted that a certain physician "almost invariably" found counsel's clients disabled).  Mere disagreement with an adjudicator's finding, or a showing of impatience, however, is not enough to show bias.  However, where the record shows that an adjudicator is severely prejudiced against the defendant, reversal is warranted.  *Sandstrom v. Butterworth*, 738 F.2d 1200 (11th Cir. 1984) (holding that where an attorney was referred to by the trial judge as "rude and nasty" and "acting like an animal," and that he was "sick of" him, and that his law partner was a "little creep," court showed severe prejudice and should not have presided at contempt proceeding).  However, a trial judge's "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are not enough to establish bias.  *Liteky v. United States*, 510 U.S. 540, 555-556, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994).

As shown above, the ALJ had reviewed the record pre-hearing and, after hearing the plaintiff's testimony, which he noted conflicted with some of Dr. Stephenson's opinions, stated that he was rejecting those opinions. The ALJ did not announce his decision before the hearing, or at any time before the case was ripe

for adjudication on the extent of plaintiff's limitations. Plaintiff has shown the court no precedent, nor has the court found any, that prevents an adjudicator from announcing a part of his decision under these circumstances.

Plaintiff's counsel was clearly frustrated, and the exchange between counsel and the ALJ was obviously somewhat heated. However, counsel's frustration was founded on an incorrect interpretation of the law. There is no due process right to unlimited cross-examination in administrative cases, as counsel in effect claimed, so the ALJ was justified in proceeding as he did. In fact, the ALJ gave counsel every opportunity to pose questions. The discussion came to an end when it became obvious that counsel had no questions to ask other than with respect to Dr. Stephenson's opinions. Those questions had been foreclosed. Again, Dr. Stephenson's opinions had been rejected as they related to the *extent* of any limitations, and were therefore irrelevant as to their *effect* on plaintiff's employability. Since this is the only issue upon which a vocational expert testifies, disallowing the questions was not evidence of bias.

   3.   **Hypothetical.**

A hypothetical question must comprehensively describe the plaintiff's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence. *Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985). Plaintiff argues that this was not done here, but that is true only if the ALJ had accepted all the limitations plaintiff claimed. The ALJ's hypothetical included all the limitations he ultimately found, so there was no error.

Plaintiff has failed to show any constitutional violation or that the ALJ erred in posing his hypothetical. Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 3rd day of January, 2006.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**